IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MATTHEW L. B.,

                        Plaintiff,

            v.                                        Civil Action No.
                                                      8:22-CV-1295 (BKS/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP                     KAELIN RICHARD, ESQ.
250 South Clinton Street, Suite 210   HOWARD D. OLINSKY, ESQ.
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                GEOFFREY M. PETERS, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §

405(g), to challenge a determination of the Commissioner of Social

Security ("Commissioner") finding that he was not disabled at the relevant

times and, accordingly, is ineligible for the disability insurance benefits

("DIB") for which he has applied.  The matter has been referred to me for

the issuance of a report and recommendation, pursuant to 28 U.S.C. §

636(b) and Northern District of New York Local Rule 72.3.  For the reasons

set forth below, I recommend a finding that the Commissioner's

determination did not result from the application of proper legal principles

and is not supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in June of 1974, and is currently forty-nine years of

age.  He was forty years old on November 4, 2014, the date he allegedly

became disabled, and forty-seven years old as of June 30, 2021, the date

he was last insured for benefits under Title II ("DLI").  Plaintiff measures five

feet and five inches in height, and weighed approximately one hundred and

eighty-six pounds during the relevant period.  He lives with his wife and two

stepdaughters in a house in Norfolk, New York.

Plaintiff reports that he has a high school diploma.  He has worked in

the past most relevantly as a plant worker and crane operator, in which

position he suffered an injury to his lower back in November of 2014.

In addition to the injury to his lower back, plaintiff alleges that he suffers from high blood pressure, a heart condition, anxiety, depression, and posttraumatic stress disorder ("PTSD").  As is relevant to his application for benefits, plaintiff has treated for his impairments with primary care physician Dr. Jayhant Jhaveri, treating psychiatrist Dr. Mariam Asar, and sources at the Champlain Valley Physicians Hospital, Massena Memorial Hospital, and St. Lawrence Health Center.  He also underwent multiple independent medical examinations ("IMEs") related to his worker's compensation claim with Dr. Douglas Kirkpatrick.

At the first administrative hearing related to his application for benefits, held on November 21, 2018, plaintiff testified that he experiences lower back pain that makes it difficult for him to sit longer than 30 minutes before needing to get up and stretch, stand longer than 30 minutes, walk more than a half-mile at a time, and lift or carry more than 20 pounds.  He is able to go for walks for exercise and spend time with his son at their camp hunting and ice fishing, although he does not participate in those activities often, but instead usually just sits with his son.  He also reported doing some snowshoeing, traveling to Buffalo for a day to help his daughter after she was in a car accident, and that he tries to engage in physical activity five times per week.  Plaintiff further testified regarding his mental

impairments, stating that they pose the greatest barrier for his returning to work.  He reported that he experiences depression and anxiety, does not like leaving the house or being around groups of people, has a poor ability to focus and concentrate and difficulty following instruction, and experiences nightmares, flashbacks, and suicidal thoughts.  Plaintiff also testified that he has heart issues, although they are not currently impacting him significantly.  In terms of daily activities, plaintiff stated that he can do some housework, such as washing dishes or using a riding lawn mower, but that his wife does the rest of the household chores.

At the subsequent administrative hearing, held on September 21, 2022, plaintiff testified that his condition has worsened, both physically and mentally.  He reported that his lower back pain prevents him from walking or sitting for long periods of time or using stairs, although he no longer receives treatment for that condition other than being prescribed pain medication.  He stated that his heart condition remains good with only some shortness of breath with exertion.  Regarding his mental impairments, plaintiff testified that he does not like being in crowds, has difficulty concentrating, and that his prescribed medications make him tired. He sometimes has bad days when he will lay in bed and avoid people.  In terms of daily activities, he reported that he depends on his wife to do most

chores and for help filling out paperwork.  He still goes to camp a few times per year, but his son and other people take care of it for him.

## II.   PROCEDURAL HISTORY

### A.   Proceedings Before the Agency

Plaintiff applied for DIB payments under Title II of the Social Security Act on October 7, 2016, alleging disability due to PTSD, a lower back injury, anxiety, and high blood pressure.  Administrative Law Judge ("ALJ") David Romeo held an administrative hearing to address plaintiff's application for benefits on November 21, 2018, following which he issued a decision on December 24, 2018, finding that plaintiff was not disabled, and therefore not entitled to the benefits for which he had applied.  On January 14, 2020, the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the decision, making that decision the final determination of the Commissioner.

Plaintiff filed a complaint in this court challenging the Commissioner's final decision.  In connection with that proceeding, I issued an order on May 10, 2021, remanding the matter based on ALJ Romeo's failure to properly consider the opinions presented by Dr. Kirkpatrick according to the governing regulations.  The Appeals Council effectuated that remand on June 13, 2021.

On remand, the case was reassigned to ALJ Elizabeth W. Koennecke, who held an administrative hearing on September 21, 2022, and then issued another unfavorable decision on October 4, 2022, again finding that plaintiff was not disabled during the relevant period.  Plaintiff has since applied to this court for relief from that most recent decision.

B.     The ALJ's Decision

In her decision, ALJ Koennecke applied the familiar, five-step sequential test for determining disability.  At step one, she found that plaintiff did not engage in substantial gainful activity during the relevant period.  ALJ Koennecke next found at step two that plaintiff suffers from severe impairments that impose more than minimal limitations on his ability to perform basic work functions, including coronary artery disease, and mental impairments "as variously characterized."  As part of her step two finding, ALJ Koennecke also found that plaintiff's alleged back pain, hypertension, and hyperlipidemia do not constitute severe impairments.

At step three, ALJ Koennecke examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of the listed conditions set forth in those regulations, specifically considering Listings

6

4.00, 12.04, 12.06, and 12.15.

ALJ Koennecke next surveyed the available record evidence and determined that plaintiff retains the residual functional capacity ("RFC") to perform a range of work at the light exertional level, as defined by the controlling regulations, with the following exceptions:

> [he] retained the ability to understand and follow simple instructions and directions; perform simple tasks independently; and maintain attention and concentration for simple tasks. [He] could regularly attend to a routine and maintain a schedule; and [he] could relate to and interact appropriately with all others to the extent necessary to carry out simple tasks. The claimant could make occasional decisions directly related to the performance of simple tasks in a stable work environment with rote work duties.

ALJ Koennecke went on to step four and found that plaintiff is unable to perform his past relevant work. She then proceeded to step five and, after eliciting testimony from a vocational expert, found that plaintiff remains able to perform available work in the national economy, citing the representative positions of sorter, router, and assembler. Based upon these findings, ALJ Koennecke determined that plaintiff was not disabled at the relevant times.

C.    This Action

Plaintiff commenced this action on December 5, 2022.[1]  In support of his challenge to the ALJ's determination, plaintiff argues that the ALJ failed to properly weigh the opinions provided by treating psychiatrist Dr. Mariam Asar and worker's compensation physician Dr. Douglas Kirkpatrick.  Dkt. No. 12.

Oral argument was conducted in this matter, by telephone, on September 28, 2023, at which time decision was reserved.

## III.  DISCUSSION

### A.  Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there is reasonable doubt as to whether an ALJ has applied

---

[1]    This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in the Supplemental Social Security Rules and General Order No. 18.  Under those provisions, the court considers the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also

include that which detracts from its weight." *Williams*, 859 F.2d at 258

(citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951);

*Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

    B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the

"inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months[.]"  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The first step requires a determination of whether

the claimant is engaged in substantial gainful activity ("SGA"); if so, then

the claimant is not disabled, and the inquiry need proceed no further.  *Id.*
§§ 404.1520(b), 416.920(b).  If the claimant has not worked at a level
constituting SGA, then the second step involves an examination of whether
the claimant has a severe impairment or combination of impairments that
significantly restricts his or her physical or mental ability to perform basic
work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to
suffer from such an impairment, the agency must next determine whether it
meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.*
§§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so,
then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F.
Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d
582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

        If the claimant is not presumptively disabled, step four requires an
assessment of whether the claimant's RFC precludes the performance of
his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).
If it is determined that it does, then as a final matter, at step five the agency
must examine whether the claimant can do any other work.  *Id.* §§
404.1520(g), 416.920(g).

        The burden of showing that the claimant cannot perform past work
lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

      C.    <u>Analysis</u>

Plaintiff's challenges in this case are to the ALJ's weighing of the opinion evidence in the record, and specifically as to the opinions from treating psychiatrist Dr. Mariam Asar and multi-time examining physician Dr. Douglas Kirkpatrick, to which the ALJ afforded little and less weight, respectively.  Because plaintiff's application was filed prior to March 17, 2017, the prior regulations, which have since been amended, apply to her claim.  Under those regulations, the ALJ was required to consider whether the treating physician's opinion was entitled to controlling weight, which must be afforded "so long as it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with (or contradicted by) other substantial evidence in the claimant's case record. *Schillo v. Kijakazi*, 31 F.4th 64, 75 (2d Cir. 2022).  If it is not entitled to controlling weight, or if it is the opinion of a non-treating physician or other

acceptable medical source, the ALJ must then determine what degree of

weight the opinion is entitled to by considering factors such as (1) the

frequency, length, nature, and extent of treatment, (2) the amount of

medical evidence supporting the opinion, (3) the consistency of the opinion

with the remaining medical evidence, and (4) whether the physician is a

specialist.  *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019).  In

making these findings, the ALJ is required to provide "good reasons" for the

weight afforded to a treating physicians' opinion, which the Second Circuit

has defined as "reasons supported by substantial evidence in the record."

*Schillo*, 31 F.4th at 75 (citing *Estrella*, 925 F.3d at 96).  Moreover, when

considering the weight to which a treating physician's opinion is entitled at

the second step of this analysis, the ALJ is required to explicitly apply the

above mentioned factors in his or her analysis; failure to do so constitutes

procedural error.  *Schillo*, 31 F.4th at 75.  However, any such error may be

found to be harmless "if the ALJ has otherwise provided 'good reasons' for

its weight assignment" or the court is assured that "'the substance of the

treating physician rule was not traversed.'"  *Schillo*, 31 F.4th at 75 (quoting

*Estrella*, 925 F.3d at 96).

### 1.   Dr. Douglas Kirkpatrick

Dr. Kirkpatrick, who administered several IMEs of plaintiff related to

his worker's compensation claim, provided four opinions regarding plaintiff's work-related functional ability.  On February 4, 2015, Dr. Kirkpatrick opined that plaintiff is capable of returning to work with restrictions of "no lifting, pulling or tugging and no lifting greater than 25 pounds," with a need for position changes and avoidance of sitting for long periods of time.  Administrative Transcript ("AT") at 296.[2]  The following month, on March 5, 2015, Dr. Kirkpatrick opined that plaintiff is limited to lifting, pulling or tugging no greater than ten pounds, with no stooping, bending or twisting, and that he requires the ability to frequently change positions with no sitting for periods exceeding ten minutes.  AT 303.  On October 12, 2015, Dr. Kirkpatrick opined that plaintiff requires restrictions of no lifting, pulling or tugging greater than ten pounds, avoidance of bending and squatting, and the ability to frequently change positions.  AT 328. Nearly a year later, however, Dr. Kirkpatrick opined on August 23, 2016, that plaintiff can work with avoidance of bending, stooping, and sitting for long periods of time and of lifting greater than 25 pounds.  AT 308.

The ALJ found these opinions to be entitled to "less weight" because, despite Dr. Kirkpatrick's citation to plaintiff's back pain as the basis for such

---

[2]   The administrative transcript is found at Dkt. No. 9, and will be referred to throughout this decision as "AT __."

restrictions, in her view "pain is a symptom, not an objective finding, and there are no objective findings to support limitations of only lifting and pulling ten pounds."  AT 981.  She also found a lack of support in the record for significant postural restrictions, noting that diagnostic imaging of plaintiff's back showed only minimal issues, and plaintiff has on at least one occasion described only minimal associated pain.  *Id.*

Before addressing the ALJ's reasons for discounting Dr. Kirkpatrick's opinion, I find it necessary to first address the ALJ's step two finding that plaintiff's lower back impairment does not constitute a severe impairment, although I acknowledge that plaintiff did not raise this issue in his briefing.  I find that conclusion to be somewhat baffling, and lacking support from substantial evidence, given the documented treatment for that impairment, which included fairly consistent notations of various abnormalities such as tenderness, limited range of motion, and plaintiff's inability to lift his left leg to ninety degrees from the time of his injury in 2014 through the end of 2017.  *See, e.g.*, AT 260, 266, 270, 274, 278, 280, 282, 285, 295, 301, 308, 316, 327, 332, 374, 437, 448, 453, 478, 522, 617, 622, 627.

To support her step two conclusion, the ALJ appeared to rely on the fact that his MRI showed "only minimal issues" and there was no evidence "other than the complaints" to show that this condition imposed any

functional abnormalities.  AT 975.  Yet, as will be discussed below, it is improper for an ALJ to interpret medical imaging findings and translate them into functional restrictions without the aid of a medical source. Moreover, ALJ Koennecke's rationale appears to ignore both the objective findings in the medical treatment evidence from 2014 to 2017 as well as the various opinions from Dr. Kirkpatrick and Dr. Jhaveri which do in fact suggest that plaintiff's back condition results in more than minimal restriction of functioning.

I acknowledge that any error at step two would arguably be considered to be harmless, given that the ALJ did provide some assessment of the plaintiff's back condition when formulating her RFC finding.  AT 979.  However, the seeming deficiencies in the ALJ's step two finding provides important context for the discussion which follows concerning the ALJ's consideration of the opinions from Dr. Kirkpatrick, which notably were based on plaintiff's back impairment.

Regarding Dr. Kirkpatrick's opinions, although they variously differed regarding the amount of weight plaintiff is able to lift, all four fairly consistently expressed a need for position changes related to an inability to sit for long periods of time, and three out of the four of them included limitations for postural activities such as stooping and bending.  In terms of

16

those postural limitations, the ALJ cited only to the MRI of plaintiff's back, which she believed showed only minimal issues, and the fact that plaintiff reported during a treatment visit that he had only minimal associated pain from that condition.  AT 981.

Although the ALJ was correct in observing that the cited MRI study, dated January 26, 2015, shows minimal disc bulges at multiple levels of plaintiff's lumbar spine with borderline or minimal canal stenosis at certain levels, it was not appropriate for the ALJ, without guidance from a medical source, to interpret that such minimal findings equate to minimal pain or functional restrictions.  AT 634.  *See Marie R. v. Comm'r of Soc. Sec.*, 21-CV-0775, 2022 WL 2180989, at *21 (N.D.N.Y. June 14, 2022) (Hummel, M.J.) (collecting cases); *see also Davis v. Comm'r of Soc. Sec.*, 16-CV-0657, 2017 WL 2838162, at *7 (N.D.N.Y. June 30, 2017) (Carter, M.J.) (finding error where the ALJ improperly weighed the medical opinion evidence against her own lay interpretation of the MRI findings).  To the contrary, sources who treated plaintiff on multiple occasions, notably Dr. Jhaveri and Dr. Kirkpatrick, did indeed find greater functional restrictions based on plaintiff's lower back impairment, regardless of the degree of disc

bulging in his spine.[3]  Further, in interpreting the medical imaging, the ALJ did not explain how her conclusion was influenced by the various objective findings in 2014 through 2017 in particular.  Because the ALJ appears to have relied on her own lay interpretation of the "minimal" findings in plaintiff's MRI to make an assumption about plaintiff's functioning, her citation to that MRI does not constitute a valid reason for rejecting any part of Dr. Kirkpatrick's opinions.

The ALJ also indicated that Dr. Kirkpatrick's citation to plaintiff's back pain as the source of his limitations was inadequate because "pain is a symptom, not an objective finding."  AT 981.  Such reasoning is flawed and inappropriate.  An ALJ cannot categorically refuse to consider a claimant's pain as evidence in support of a limitation merely because pain itself is not objectively verifiable, especially as pain can manifest in ways that are observable.  Notably, the ALJ did not appear to acknowledge the fact that, as was discussed above, there were objective findings during examinations, including those of Dr. Kirkpatrick, which appear to support the existence of back pain.  Specifically, it was observed on many

---

[3]    I note in particular that Dr. Kirkpatrick explicitly indicated in at least one of his reports that he had reviewed the findings in the MRI prior to rendering his opinions.  AT 319.  The fact that Dr. Kirkpatrick had himself viewed and interpreted plaintiff's MRI findings and concluded that plaintiff had greater limitations than accounted for by the ALJ highlights the erroneousness of the ALJ's reliance on her own interpretation of the MRI to reject Dr. Kirkpatrick's opinions.

occasions throughout 2014, 2015, 2016, and 2017 that plaintiff had

paraspinal muscle tenderness, limited lumbar spine range of motion, and

an inability to lift his left leg to ninety degrees. *See, e.g.*, AT 260, 266, 270,

274, 278, 280, 282, 285, 295, 301, 308, 316, 327, 332, 374, 437, 448, 453,

478, 522, 617, 622, 627. Dr. Kirkpatrick himself observed in his

examinations in early 2015 that plaintiff had tenderness and pain on his left

side, some decrease in range of motion, and diminished inability to straight

leg raise. AT 295, 301-02. In later 2015, he observed mild pain on

plaintiff's left side, tenderness to palpation at the left sacral notch,

discomfort, loss of range of motion, and some loss of sensation in the left

thigh. AT 327. During his August 2016 examination, Dr. Kirkpatrick again

noted similar findings of tenderness, discomfort to light touch, diminished

range of motion, and diminished sensation in plaintiff's left thigh. AT 308.

Dr. Kirkpatrick's findings draw support from the report of consultative

examiner Dr. Kalyani Ganesh, who observed in March 2017 that plaintiff

was unable to walk on his heels or squat and had some loss of range of

motion in his lumbar spine, although he was able to bend to pick up his

belongings. AT 554-55.

These objective findings certainly go beyond a mere citation to

reported pain, and in fact appear to support, at least to some extent,

plaintiff's reports of pain.  Yet, the ALJ did not explain how such objective

factors were considered when she assessed Dr. Kirkpatrick's opinions.  In

addition, the ALJ's refusal to consider pain as a valid explanation

supporting Dr. Kirkpatrick's opined limitations is logically inconsistent with

her citation in the same paragraph to plaintiff's report on another occasion

that he had minimal pain as evidence that he was not significantly limited.

The ALJ cannot rely on reports of less pain as sufficient evidence to afford

less weight to Dr. Kirkpatrick's opinion while simultaneously rejecting Dr.

Kirkpatrick's citation to the existence of more limiting pain on the basis that

pain is a symptom rather than an objective finding.  As a result, I find that

the ALJ's notation that there are no objective findings to support pain or

greater limitations is not supported by substantial evidence, and the ALJ

failed to appropriately consider that objective evidence when weighing that

opinion.

I note, moreover, that the ALJ's citation to a single instance from a

January 2015 physical therapy record, in which it was noted that plaintiff

reported "stiffness in the lower back with minimal associated pain" is also

simply not sufficient to support her assessment of this opinion.  AT 1665.

Notably, although the ALJ did not mention such fact, the other records from

that same course of physical therapy from December 2014 document that

plaintiff was in fact experiencing more than minimal pain for most of that month, although he did begin to report improvement with treatment by the end of December.  AT 1667-82.  However, as was already discussed, such improvement did not fully eliminate plaintiff's symptoms, as he continued to report and demonstrate pain and limitations as reflected in subsequent treatment notes, and continued to be prescribed pain medication by Dr. Jhaveri.  *See* AT 280 (noting that, in August 2015, plaintiff was taking gabapentin, cyclobenzaprine, naproxen, and Cymbalta in an effort to address his pain, and was recommended to undergo an injection as well). Because it is not clear that the ALJ fully considered the scope of plaintiff's documented pain symptoms when choosing to rely on a single report of his pain level during what appears to be a period of improvement that did not last, I am unable to meaningfully assess whether the ALJ's conclusion that plaintiff experienced only minimal pain is a reasonable one supported by substantial evidence.  This reason therefore also cannot serve as a sufficient reason for rejecting Dr. Kirkpatrick's opinion.

Giving the ALJ the benefit of the doubt, and reading her decision as a whole, I acknowledge that other findings within her discussion of the evidence could potentially stand as reasons to support her rejection of Dr. Kirkpatrick's opinion.  However, I also find those to be inadequate to

support her conclusions.  To the extent the ALJ's citation to reported

activities such as hiking, hunting, ice fishing, snow shoeing, walking,

jogging, and using an elliptical trainer can be extrapolated as an indication

that plaintiff is not as physically limited as Dr. Kirkpatrick opines, I note that

the ALJ's decision excludes a fair amount of significantly relevant context

regarding such activities.  At the administrative hearings in particular,

plaintiff qualified that he did not perform many of these activities very often,

and that he usually just spends time with his son while his son hunts or ice

fishes.  AT 39-41.  Further, the ALJ did not explain how these activities

undermine the specific limitations Dr. Kirkpatrick opined, which include

bending, stooping, and being unable to sit for long periods of time.  The

ALJ also relied on statements in plaintiff's written function report while not

only ignoring relevant context even within that same report, but also failing

to consider his other reports at the administrative hearing, wherein he

reported being able to sit and stand for only twenty-five or thirty minutes at

one time and to walk for only a half-mile at one time.  AT 39.  Because, as

with the medical evidence, I am not convinced the ALJ appropriately

considered the full context of plaintiff's reported activities when purporting

to rely on those as evidence of greater functional capacity, her discussion

of those in the decision does not constitute a sufficient reason to support

her assessment of Dr. Kirkpatrick's opinion.

For all of the above reasons, I find that the ALJ failed to provide reasons, supported by substantial evidence, sufficient to justify her choice to afford less weight to Dr. Kirkpatrick's opinion. These errors are not harmless, because it is not clear from the record before me that plaintiff would remain able to perform significant work if certain limitations, especially limitations precluding prolonged sitting or a need for position changes, were incorporated into the RFC. Notably, the hypothetical question posed to the vocational expert at the first administrative hearing that contemplated a need to change positions was in relation to a limitation to sedentary work, and would permit plaintiff to sit for sixty minutes at one time. AT 44. Because it is not clear how a need to change positions would impact the ability to perform light work and how the outcome would be affected if plaintiff was limited to sitting for less time at once, the vocational expert's existing testimony does not indicate whether adopting Dr. Kirkpatrick's opinion would or would not alter the ultimate finding of plaintiff's ability to perform certain occupations. I therefore recommend that this matter be remanded for a more appropriate and thorough consideration of Dr. Kirkpatrick's opinions.

      2.    <u>Dr. Mariam Asar</u>

Dr. Asar also provided multiple opinions regarding the plaintiff's abilities, although hers addressed his mental functioning. On April 19, 2018, she completed a functional assessment form, in which she noted that plaintiff had relevant diagnoses of major depressive disorder and generalized anxiety. AT 630. She opined that those impairments cause an extreme inability to appropriately maintain control of his emotions and maintain focus/attention/concentration, as well as a suspected or minimal impairment of his ability to maintain the safety of himself or others. AT 631. She further opined that plaintiff has difficulty with activities of daily living including completing household chores, socializing, caring for others, shopping, and traveling out of state. AT 631-32.

A few months later, on July 31, 2018, Dr. Asar completed a medical source statement form, opining that plaintiff has marked limitations in all of the listed areas, including the abilities to understand, remember and carry out simple instructions, to make judgments on simple work-related decisions, to understand, remember, and carry out complex instructions, to make judgments on complex work-related decisions, to interact appropriately with the public, supervisors, and coworkers, and to respond appropriately to usual work situations and changes in a routine work setting. AT 577-78. She further stated that plaintiff is unable to leave his

home due to anxiety, and referred to her treatment notes as the basis for her opinion.  AT 578.

Finally, on August 24, 2022, Dr. Asar completed another medical source statement, in which she identified relevant symptoms associated with plaintiff's mental impairments, including anhedonia, decreased energy, feelings of guilt or worthlessness, generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, recurrent or intrusive recollections of a traumatic experience, impulsive behavior, impairment of impulse control, persistent disturbance of mood or affect, and sleep disturbance.  AT 1561.  Dr. Asar opined that plaintiff has "no useful ability to function"[4] in the areas of completing a normal workday or workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number of rest periods, accepting instructions and responding appropriately to criticism from supervisors, and dealing with normal work stress.  AT 1562.  She opined that plaintiff is "unable to meet competitive standards"[5] in his abilities to carry out very

---

[4]    This is defined in the form as "an extreme limitation, means your patient cannot perform this activity in a regular work setting."

[5]    This is defined in the form as "your patient cannot satisfactorily perform this activity independently, appropriately, effectively, and on a sustained basis in a regular work setting."

short and simple instructions, maintain regular attendance and be punctual,

sustain an ordinary routine without special supervision, work in coordination

with or proximity to others, make simple work-related decisions, respond

appropriately to changes in a routine work setting, travel in an unfamiliar

place, and use public transportation. *Id.* Dr. Asar further opined that

plaintiff is "seriously limited but not precluded"[6] in his abilities to remember

work-like procedures, understand and remember very short and simple

instructions, maintain attention for two-hour segments, ask simple

questions and request assistance, get along with coworkers and peers

without unduly distracting them or exhibiting behavioral extremes, interact

appropriately with the general public, and maintain socially appropriate

behavior. AT 1562. She explained that these limitations are based on

plaintiff's severe anxiety and PTSD with severe panic attacks, and that the

fact that he needs assistance with activities of daily living means he would

not be able to carry out work requests on a regular basis. AT 1563. Dr.

Asar further opined that plaintiff would be off-task more than twenty-percent

of the workday and would likely be absent more than four days per month.

*Id.* She also appears to have indicated that the limitations described in this

---

[6]    This is defined in the form as the "ability to function in this area is seriously
limited and less than satisfactory, but not precluded in all circumstances."

form have been present since she began treating plaintiff in 2015.  AT 1565.

The ALJ found these opinions were entitled to little weight because they are "not consistent with treatment notes or clinical findings," noting specifically that many treatment notes describe various normal findings or no depression and anxiety, and that plaintiff has reported being able to engage in a wide range of activities of daily living.  AT 980-81.

As an initial matter, it is important to highlight that Dr. Asar is a treating physician and thus, under the applicable regulations, her opinions are entitled to the benefit of the treating physician rule.  I note that the ALJ did not provide any specific discussion of her findings as to whether Dr. Asar's opinions are entitled to controlling weight, although it is certainly obvious from her discussion of the reasons for affording that opinion little weight that she found it is not.  Nor did the ALJ address all of the relevant *Burgess*[7] factors: she did not mention, for example, either the treating relationship or Dr. Asar's specialty in mental health, or provide any indication as to how those factors might have influenced the weight to which she found Dr. Asar's opinions were entitled.  Given the ALJ's procedural errors in complying with the regulations, the question is

---

[7]     *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008).

therefore whether she nonetheless provided good reasons for her findings or her discussion shows that the substance of the treating physician rule was not traversed. *Schillo*, 31 F.4th at 75 (quoting *Estrella*, 925 F.3d at 96). I find that the ALJ's decision does not meet even that standard.

The ALJ first rationalized that Dr. Asar's opinions are not consistent with the treatment notes or clinical findings, pointing to the fact that records "describe a cooperative attitude, good eye contact, no psychomotor agitation, logical thought processes, normal attention, and normal motor behavior," as well as pleasant and cooperative behavior. AT 980-81. While I do not necessarily disagree with the ALJ that the medical records do not corroborate the extreme levels of restriction outlined in Dr. Asar's opinion, the ALJ's characterization of the medical evidence raises questions as to whether she appropriately considered such evidence. Notably, although the treatment records do indeed contain the normal findings cited by the ALJ, she completely failed to acknowledge that Dr. Asar's treatment notes in particular consistently document over a period of years that, on mental status examination, plaintiff was observed to display an anxious and dysphoric affect with limited insight and judgment. *See e.g.*, AT 414, 422, 544, 563, 566, 571, 812, 959, 1251, 1258, 1265, 1272, 1285, 1296, 1308, 1316, 1322. Again, while it is not certain that such

evidence suggests the ALJ was required to adopt Dr. Asar's opinions, the

ALJ did not mention how she factored any of these longitudinal findings

from Dr. Asar herself into the analysis.  Simply put, it is not the function of

this court to make any such assessments in the first instance.  Because the

ALJ appears to have selectively relied upon normal findings in the

treatment notes while ignoring the abnormal findings that were also

consistently present, I am unable to meaningfully review whether the ALJ's

reliance on the apparent unsupportability and lack of consistency

constitutes a good reason, supported by substantial evidence, to discount

Dr. Asar's opinions, and such reason consequently cannot serve to uphold

her overall conclusion as to those opinions.[8]

  In addition to failing to acknowledge certain objective evidence in Dr.

Asar's treatment records that appear to lend some support to her opinions,

I also note that the ALJ did not appear to address any of the various

explanations for her opinions that Dr. Asar included within the forms on

---

[8] I note that the ALJ's discussion of the mental health treatment evidence earlier in the decision also did not acknowledge any of the relevant abnormal findings from Dr. Asar's treatment notes or the other record evidence.  AT 978-79.  Moreover, in her discussion of the "B criteria" related to the mental health listings, the ALJ asserted that "[r]ecords from the period in question describe normal judgment," citing to a single treatment note, which, as was discussed, appears to be an outlier given that the treatment notes documented on most occasions that plaintiff's judgment was noted to be impaired.  AT 977.  This further highlights the concerns over whether the ALJ appropriately assessed the mental health treatment evidence.

which those opinions are rendered.  Specifically, Dr. Asar variously

indicated that plaintiff's anxiety and panic attacks, caused by being around

people in particular, prevent him from working, that his difficulties are

caused by anxiety, that he has PTSD and anxiety related to the death of his

son, that he experiences pain that impacts his ability to work, and that he

would not be able to carry out work requests on a regular basis due to

anxiety, PTSD and panic attacks,   AT 577-79, 630-32, 1562-63.  It is not

clear how the ALJ considered any of these explanations or the extent to

which they might support Dr. Asar's opinion and, once again, it is not for

this court to determine in the first instance whether or not such statements

provide adequate support for the opinion.

     The only other discernable reason the ALJ provides to support her

rejection of Dr. Asar's opinions is based in plaintiff's reported daily

activities.  However, as was already discussed, it is not clear that the ALJ

considered the nuances of the activities that plaintiff reported, and

particularly she did not appear to take into account limitations and

qualifications regarding the ability to perform such activities that plaintiff

reported.  In addition to that previous discussion of plaintiff's more

physically demanding activities, I note that the ALJ stated that plaintiff can

perform basic household chores.  Yet plaintiff testified that the only specific

chores he did in 2018 were washing dishes sometimes and using a riding lawn mower for his small yard, and that his wife did the remainder of the household chores.  AT 39.  Further, to the extent the ALJ relied on a report that plaintiff traveled to Buffalo to help his daughter after she was in a car accident, plaintiff pointed out that the trip was only for a day.  AT 41. Although some of these activities certainly might contradict portions of Dr. Asar's opinions, it is not clear that the ALJ appropriately considered the nuances of what plaintiff reported, nor did she explain why they merit the rejection of every part of those opinions. Further, to the extent that plaintiff's daily activities are inconsistent with Dr. Asar's opinion, reliance on a claimant's reports of activities alone is not adequate grounds for declining to credit a treating physician's opinion.  *See Gentles v. Comm'r of Soc. Sec.*, 848 F. App'x 56, 57 (2d Cir. 2021).  Because the only facially valid basis for rejecting Dr. Asar's opinions is her reliance on plaintiff's reported activities of daily living – and even that conclusion raises questions regarding whether the ALJ's assessment of all of the evidence was careful and complete – I find that the ALJ failed to provide good reasons for the weight afforded to those opinions, and therefore recommend on this additional basis that this matter be remanded for a proper assessment of Dr. Asar's treating physician opinions.

31

IV.    SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I recommend a finding that the determination did not result from the application of proper legal principles and is not supported by substantial evidence.  Accordingly, it is hereby respectfully

RECOMMENDED that plaintiff's motion for judgment on the pleadings (Dkt. No. 12) be GRANTED, defendant's motion for judgment on the pleadings (Dkt. No. 13) be DENIED, the Commissioner's decision be VACATED, and this matter be REMANDED for further proceedings consistent with this decision and order, without a directed finding of disability, pursuant to sentence four of 42 U.S.C. § 405(g).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:     September 29, 2023
           Syracuse, NY

_____
DAVID E. PEEBLES
U.S. Magistrate Judge